**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

KEITH M. SCHUELLER,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀C.A. No.: N14C-10-201EMD
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
BRETT CORDREY, individually and in⠀⠀)
his capacity as a DELAWARE STATE⠀⠀⠀)
TROOPER, the STATE of DELAWARE,⠀⠀)
and the DEPARTMENT of PUBLIC⠀⠀⠀⠀)
SAFETY-DIVISION of STATE POLICE⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀⠀)

**ORDER GRANTING, IN PART, AND DENYING, IN PART,
PLAINTIFF'S DAUBERT MOTION TO EXCLUDE
THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS**

1.⠀⠀⠀⠀This case arises out of the shooting of Keith Schueller by Delaware State Police Trooper Brett Cordrey on February 19, 2013.  Mr. Schueller sues Trooper Cordrey individually and in his representative capacity as a Delaware State Trooper.  Mr. Schueller also brings claims against the State of Delaware and the Department of Public Safety-Division of State Police (collectively with Trooper Cordrey, the "Defendants") under a theory of *respondeat superior*. Mr. Schueller asserts claims for battery, negligence, gross negligence, intentional infliction of emotional distress, and excessive force under Article I, Section 6 of the Delaware Constitution.

2.⠀⠀⠀⠀On February 3, 2017, the Court held a pretrial conference (the "February 3 Pretrial Conference") and heard argument on a number of outstanding motions, including the Plaintiff's Daubert Motion to Exclude the Testimony of Defendants' Expert Witness (the "Motion"); Defendants' Response to Exclude the Testimony of Defendants' Expert Witness (the "Response"); the Supplement to Plaintiff's Daubert Motion to Exclude the Testimony of Defendants' Expert Witness (the "Supplement"); and the Memorandum Opinion and Order,

dated October 24, 2016, from the United States District Court for the District of Maryland (the "District Court Decision"). At the end of the February 3 Pretrial Conference, the Court took the Motion under advisement.

3. The parties provide different versions of the events and circumstances leading up to and including the shooting of Mr. Schueller by Trooper Cordrey. There are discrepancies in each party's story. Both parties agree that Mr. Schueller landed on his back. This means that Mr. Schueller somehow turned in midair after he was shot and before hitting the ground. Mr. Schueller alleges that his back was turned towards Trooper Cordrey during the entirety of the chase, which Mr. Schueller contends explains why the bullet entered his back. When asked about this at his deposition, Mr. Schueller explained that did a "football move" in midair.[1] In his version of events, Trooper Cordrey alleges that Mr. Schueller turned to face him and began wielding the shovel as a weapon, swinging it over his head in a violent manner. Both parties also agree that the bullet entered Mr. Schueller's back. When asked at his deposition how the bullet entered Mr. Schueller's back when he was supposedly facing him, Trooper Cordrey stated that he did not find out until later that the bullet entered Mr. Schueller's back.[2] Trooper Cordrey maintains that he believed he shot Mr. Schueller in the stomach.[3]

4. The parties have retained experts to address the discrepancies. Mr. Schueller provides three expert reports. The first is a report by Dr. Mark Balash, the second is a report by Dr. Paul McCauley, and the third is a rebuttal report by Dr. Jeremy Bauer. The Defendants provide two expert reports. The first is an expert report of Emmanuel Kapelsohn, a use-of-force and firearms expert, who states that Mr. Schueller's "gunshot injury is consistent with him

---

[1] *See* Dep. of Mr. Schueller p. 57.
[2] *See* Dep. of Trooper Cordrey p. 141– 42.
[3] *See* Expert Report of Dr. Bauer.

having started to turn to continue running as Tfc. Cordrey was in the process of firing the shot."[4] The second is an expert report of Dr. Geoffrey Desmoulin, a biomechanical engineer, who analyzes the fall pattern after being shot for a person of Mr. Schueller's physical dimensions.[5] The Motion only addresses the Mr. Kapelshohn's report.

5.     The Motion takes issue with four opinions contained in Mr. Kapelsohn's report: (i) findings regarding potential damage by the shovel and the opinion that the shovel could kill a man with a blow to the head or cause injury, (ii) opinion regarding the 21-Foot Rule and the time it would take for Mr. Schueller to strike Trooper Cordrey, (iii) opinion regarding the location of the bullet wound, and (iv) opinion as to how Mr. Schueller could be shot in the back when originally facing Trooper Cordrey prior to the shooting.[6] Mr. Schueller argues that these foregoing opinions are based on mere conjecture, rather than solid scientific theory, and alleges that Mr. Kapelsohn will "attempt to disguise his advocacy in a cloak of what other experts have called pseudoscience, and will attempt to bolster the testimony of the officer defendant with scientific-sounding terminology that is based on agenda-driven research that lacks any characteristics of valid science."[7] Mr. Schueller also argues that Mr. Kapelsohn is not qualified to render the opinions.[8]

6.     The admissibility of expert testimony is governed by Delaware Rules of Evidence 702 ("Rule 702"). Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

---

[4] *See* Expert Report of Dr. Kapelsohn p. 17.
[5] *See* Expert Report of Dr. Desmoulin.
[6] *See* Pl.'s Mot.
[7] *Id.* p. 5–6.
[8] *Id.* p. 5.

3

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[9]

When applying Rule 702, Delaware Courts have adopted the U.S. Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals*.[10] *Daubert* requires the trial judge to act as gatekeeper and determine whether the expert testimony is relevant and reliable and whether it will assist the trier of fact.[11] The Delaware Supreme has adopted a five-part test for trial courts to consider when determining the admissibility of scientific or technical testimony. The trial court must decide whether:

> (i) the witness is qualified as an expert by knowledge, skill experience, training or education; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (iv) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[12]

7.     Mr. Schueller argues that Mr. Kapelsohn is not qualified to render the opinions in the report because he has no "formal, accredited education in police work; no evidence of attendance at or graduation from a police academy; no evidence of any full-time, or formal employment with a law enforcement agency; and no training courses lasting more than one week."[13] While Mr. Kapelsohn may lack these qualifications, he is nonetheless qualified to testify as a firearms and use-of-force expert by his knowledge, skill, experience, and training.

8.     Mr. Kapelsohn has served as a sworn reserve deputy sheriff and special deputy sheriff for two sheriff's departments for 19 years. Mr. Kapelsohn is certified as a firearms instructor by the FBI and the International Association of Law Enforcement Firearms Instructors. He is a certified instructor in the fields of police defensive tactics instruction, baton instruction,

---

[9] D.R.E. 702.
[10] 509 U.S. 579 (1993).
[11] *See Daubert*, 509 U.S. at 582.
[12] *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997).
[13] Pl.'s Mot. p. 2.

weapon retention instruction, pepper spray instruction, less lethal impact munitions instruction, Taser instruction, and psychomotor skill design instruction. Mr. Kapelsohn is also a certified force science analyst and a certified shooting scene reconstructionist. For the past 14 years, Mr. Kapelsohn has served on the Curriculum Development Committee that wrote the firearms and use-of-force curriculum used by police academies throughout Pennsylvania. Mr. Kapelsohn has testified as an expert witness in state and federal courts at least 60 times on issues involving firearms and use of force. Mr. Kapelsohn has also published various articles on firearms and use-of-force policies. Therefore, the Court is satisfied that Mr. Kapelsohn is qualified as a use-of-force and firearms expert.

9.     The Court does not believe that Mr. Kapelsohn is qualified as a "force science analyst." The Court agrees with, and incorporates by reference, the District Court Decision that Mr. Kapelsohn is not qualified to offer opinions in the field of force science.

10.     On this paper record, the majority of the opinions rendered by Mr. Kapelsohn appear reliable and relevant. However, the Court will not let Mr. Kapelsohn opine on the sections of his report entitled "The Long-Handled Transfer Shovel Was A Formidable And Deadly Weapon;" "Schueller Could Have Struck Tfc Cordrey With the Shovel in A Second or Less;" "Human Reaction Time;" "Officer-Involved Shooting 'Hit Ratios' and Time Required Before An Attacker May Be Incapacitated By Handgun Fire;" or "Comments on Mr. Schueller's Deposition and Interrogatorry Answers." These sections involve opinions based on field of force science, not beyond the common knowledge of an ordinary layman or related to Mr. Kapelsohn offering an opinion on the truthfulness of Mr. Schueller.

11.     The decision here does not preclude Trooper Cordrey from testifying about his knowledge and training with respect to the 21-foot Rule, or whether he subjectively felt that the

shovel appeared to be a deadly weapon. Moreover, Mr. Kapelsohn can use Mr. Schueller's deposition testimony, courtroom testimony and/or interrogatory answers as facts supporting (or not supporting) his opinions. But, the Court believes that the section entitled "Comments on Mr. Schueller's Deposition and Interrogatorry Answers" is a poorly disguised attempt by Mr. Kapelsohn to opine on the truthfulness, or not, of Mr. Schueller's responses to interrogatories and deposition testimony.

12. Mr. Kapelsohn bases his opinion on information reasonably relied upon by other use-of-force, firearms, and reconstruction experts. Mr. Kapelsohn relies on police records, including Taser records, the Delaware State Police Force Policy, a video of the scene, photographs of the scene, and MVR footage from Trooper Cordrey's vehicle. Additionally, Mr. Kapelsohn relies on medical records, including Mr. Schueller's X-rays and hospital, rehabilitation and prescription records. Mr. Kapelsohn inspected items of physical evidence, visited the scene of the incident, and performed a "walk through" of the pursuit and incident scene with Trooper Cordrey. Finally, Mr. Kapelsohn has reviewed the Complaint, the interrogatories and responses, the deposition testimony of all witnesses, and the expert reports of Mr. Schueller's expert witnesses. The Court is satisfied that Mr. Kapelsohn has a reasonable basis for his opinions.

13. The Court believes the remaining parts of Mr. Kapelsohn's report—those relating to use of force and incident reconstruction—will assist the trier of fact in this civil action.

14. The Court cannot see how admitting any of the remaining opinions at issue would unfairly prejudice Mr. Schueller. Mr. Schueller received Mr. Kapelsohn's report well in advance of trial. Mr. Schueller also had his own expert respond to the opinions contained in Mr. Kapelsohn's report. Mr. Schueller can also cross-examine Mr. Kapelsohn about his

6

qualifications, opinions, and the information relied upon to form his opinions.  The Court also

notes that there is no potential to confuse or mislead the jury in this case because this is a bench

trial.  The Court is fully capable of weighing the expert testimony when rendering its decision.

**IT IS HEREBY ORDERED** that, consistent with the guidelines set forth in *Daubert* and

*Cunningham*, the Motion is GRANTED, in part, and DENIED, in part, as set forth in this Order.

Dated: February 15, 2017
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge


cc:     Steven Norman, Esq.
        Michael McTaggart, Esq.